**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**HARTFORD DIVISION**

| | |
|---|---|
| In re:<br><br>Shaun Gordon,<br><br>Debtor. | Chapter 13<br><br>Case No. 25-20795 (JJT)<br><br>Re: ECF No. 113 |

**MEMORANDUM OF DECISION**
**CONFIRMING FOURTH AMENDED CHAPTER 13 PLAN**

Before the Court is the Debtor's Fourth Amended Chapter 13 Plan (Plan, ECF No. 113). Over the course of this case, the Court had grappled with issues such as good faith related to the Debtor's proposed retention of a house and car that both had well above-median payments, treatment of a domestic support obligation (DSO) related to the Debtor's divorce—for which no proof of claim was filed—and, finally, feasibility, once the Debtor attempted to address the Court's issues with good faith. After notice and a hearing on August 20, 2026, at which the Debtor testified, and supplemental briefing, the Court is ready to confirm the Plan.

The Debtor filed the instant Chapter 13 case on July 31, 2025. Although the Chapter 13 Trustee was ready to recommend confirmation of the Debtor's Second Amended Plan in March and April of 2026, the Court expressed its concern with two matters. The first was a DSO that was entered in the Connecticut Superior Court and was not addressed by the Second Amended Plan. After the Debtor filed a Motion to Enforce Automatic Stay (ECF No. 55) against his ex-spouse, the Court determined that the debt owed to the ex-spouse was and is a nondischargeable

DSO and that the ex-spouse did not violate the automatic stay in filing a motion for contempt in the Superior Court (ECF No. 68).[1]

The second issue the Court examined under the Debtor's Second Amended Plan was that it proposed a 0% dividend, despite the Debtor's high earnings and lifestyle. What prevented the Debtor from paying a dividend were his monthly mortgage and car payments, both of which were well above the median for this area. In other words, the Court was concerned that the Debtor's insistence on maintaining a large home[2] and expensive car[3] was prejudicing his unsecured creditors, suggesting potential bad faith.[4] *See* 11 U.S.C. § 1325(a)(3); *see also generally Goddard v. Burnett*, 173 F.4th 550 (4th Cir. 2026).

In response to these concerns, the latest Plan instead proposes to pay the prepetition DSO arrearage in full over the life of the plan and provide unsecured creditors a 32.14% dividend. This presented a new issue: namely, whether the Plan as proposed was feasible given the Debtor's then-current income and his insistence on maintaining the house and car. *See* 11 U.S.C. § 1325(a)(6). Before the August 20, 2026 hearing, however, the Debtor obtained new employment, which reasonably projects to provide him with sufficient additional income to make

---

[1] The Debtor appealed the Court's determinations vis-à-vis the DSO, which has been stayed pending the Debtor's attempts to confirm the Plan.

[2] The Debtor's house, which is in excess of 3500 square feet, has one full-time resident: the Debtor himself. (The Debtor's two children have also lived in the house.) The Court was also skeptical of the appraisal provided for the property, which included the Debtor's purchase of the house itself as a comparable, despite that purchase having taken place in 2018, well before the post-COVID spike in real estate prices in the area.

[3] The Debtor's vehicle is a 2022 BMW X4 that was worth in excess of $50,000 on the petition date, but had no equity because the Debtor owed more than $78,000 on the vehicle loan.

[4] The Court was also concerned that the Debtor's undervalued appraisal on his home was potentially shielding it from being liquidated for the benefit of unsecured creditors. The Court even considered appointing an independent appraiser, as there were indications that the property might be worth somewhere between $800,000 and $1,000,000. The Court eventually opted not to do so after the Debtor's counsel argued that, with a mortgage balance of approximately $578,000, a second lien of approximately $67,000, and delinquent property tax debt of approximately $32,000—coupled with the Debtor's homestead exemption—there would likely not be much, if any, equity available for unsecured creditors should the house be sold.

the proposed Plan payments, which would solve both the good faith and feasibility issues at the same time.

Still, the ex-spouse had not filed a claim, and the Court was concerned about its authority to allow the defaulted DSO arrearage to be paid over the life of the Plan. After supplemental briefing by the Debtor (ECF No. 135), the Court is comfortable finding that the Bankruptcy Code allows a prepetition DSO arrearage to be paid over the life of a plan while preserving the state court's authority over postpetition DSO obligations, based upon the reasons and authority provided in the supplemental brief. *See In re Young*, 497 B.R. 904, 917 (Bankr. W.D. Ark. 2013) ("the debtor must address any prepetition domestic support arrearages through a plan that affords the ex-spouse priority under section 507(a)(1)"); 11 U.S.C. § 362(b)(2)(A)(ii) (bankruptcy petition does not stay "the commencement or continuation of a civil action or proceeding . . . for the establishment or modification of an order for domestic support obligations").

Accordingly, the Plan will be confirmed. A separate confirmation order will issue.[5]

IT IS SO ORDERED at Hartford, Connecticut this 20th day of October 2026.




[5] To the extent that the Court's prior ruling on the DSO is inconsistent with this Memorandum of Decision, it is superseded.